IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MYRNA DARTSON and WILLIE MAE DARTSON, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:17-cv-569-M |
| ARTURO VILLA; AN LUXURY IMPORTS, LTD. d/b/a BMW OF DALLAS; ESIS, INC.; and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER[1]

Defendants AN Luxury Imports, Ltd. d/b/a BMW of Dallas ("BMW") and ESIS, Inc. ("ESIS"; with BMW collectively, "Defendants") filed a Motion for Discovery Sanctions against Plaintiffs Myrna Dartson and Willie Mae Dartson, seeking an order under Federal Rule of Civil Procedure 37(b)(2) precluding Plaintiffs from presenting evidence to support a claim of mental anguish and awarding Defendants their reasonable and necessary attorneys' fees for having to bring the Motion for Discovery Sanctions. *See* Dkt. No. 56.

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

Chief Judge Barbara M. G. Lynn referred this motion to the undersigned United States magistrate judge for a hearing, if necessary, and for recommendation or determination under 28 U.S.C. § 636(b). *See* Dkt. No. 66.

The pertinent factual and procedural background is familiar to the parties and will not be recounted here at length except as necessary for the Court's analysis and conclusions below.

In an April 2, 2018 Memorandum Opinion and Order [Dkt. No. 72], the Court granted in part and denied in part Defendants' Motion for Discovery Sanctions [Dkt. No. 56]; found, under all of the circumstances, that Defendants' request for an order excluding evidence of mental anguish damages is not appropriate; and determined that, under Rule 37(b)(2), as the appropriate remedy, Plaintiffs' counsel must pay Defendants the attorneys' fees that they incurred in drafting and filing their Motion for Discovery Sanctions [Dkt. No. 56] and reply in support [Dkt. No. 70].

The parties were unable reach agreement as to the reasonable amount of these attorneys' fees to be awarded under Rule 37(b)(2), *see* Dkt. No. 78, so Defendants filed an Application for Attorneys' Fees, *see* Dkt. No. 106, to which Plaintiffs filed a response, *see* Dkt. No. 126, and in support of which Defendants filed a reply, *see* Dkt. No. 128.

The Court now GRANTS Defendants' Application for Attorneys' Fees [Dkt. No. 106] under Federal Rule of Civil Procedure 37(b)(2). *See generally Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL 410062, at *1-*4 (N.D. Tex. Jan. 30, 2015) (explaining that, when a district judge refers a motion for sanctions to a magistrate judge, the

sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Federal Rule of Civil Procedure 72(a) or 72(b) applies and that, when the magistrate judge finds that dismissal or another sanction disposing of a claim or defense is unwarranted, the motions should be characterized as non-dispositive and may be ruled on by the magistrate judge) (followed in *Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:11-cv-1885-L-BN, Dkt. No. 373 at 2 (N.D. Tex. Dec. 1, 2016)); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. Unit A 1981) (per curiam) (a magistrate judge has authority to enter a nondispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37).

## Legal Standards

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; [or] (vi) rendering a default judgment against the disobedient party." FED. R. CIV. P. 37(b)(2)(A)(i)-(vi).

Rule 37(b)(2)(C) further requires that, "[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

"This Court uses the 'lodestar' method to calculate attorney's fees." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing *Fender v. Zapata Partnership, Ltd.*, 12 F.3d 480, 487 (5th Cir.1994); *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). That includes attorneys' fees awarded as discovery sanctions under Rule 37. *See Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002).

The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (*citing Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)). The relevant legal community is the community in which the district court sits. *See Tollett*, 285 F.3d at 368. Generally, the reasonable hourly rate for a community is established through affidavits of other attorneys practicing there. *See id.* But the Court also may

use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *Davis v. Bd. of Sch. Comm'rs of Mobile Cty.*, 526 F.2d 865, 868 (5th Cir. 1976); *Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

The party seeking reimbursement of attorneys' fees bears the burden to "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum*, 465 U.S. at 896 n.11, as well as to establish the number of hours expended through the presentation of adequately recorded time records as evidence, *see Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). A movant seeking attorneys' fees is also "charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment," which "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799 (footnotes omitted).

The Court should use this reported time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See Watkins*, 7 F.3d at 457. The hours remaining are those reasonably expended. *See id.*

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 800. Further, "[i]f a

party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing. It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015).

And the Court should not "eliminate wholesale the services of attorneys without identifying the particular services which are regarded as duplicative." *Tasby v. Estes*, 651 F.2d 287, 289-90 (5th Cir. Unit A July 1981) (internal quotation marks omitted). "Percentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment" – including by failing to write off time spent on work that was redundant and in hindsight may have been unnecessary – or "when a court reduces excessive time spent on particular legal services" or for particular services that are "duplicative." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-752-D, 2011 WL 487754, at *13 (N.D. Tex. Feb. 11, 2011); *Shepherd v. Dallas Cty., Tex.*, No. 3:05-cv-1442-D, 2009 WL 977294, at *2 n.3 (N.D. Tex. Apr. 10, 2009); *accord Saizan*, 448 F.3d at 799 ("The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." (footnote omitted)); *Cookston v. Freeman, Inc.*, No. 3:98-cv-2106-D, 1999 WL 714760, at *5 (N.D. Tex. Sept. 14, 1999).

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into

account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19; *see also Saizan*, 448 F.3d at 800. Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins,* 7 F.3d at 457.

The Court recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, may have been called into question by the Supreme Court's decision in *Perdue v. Kenny A.*, 559 U.S. 542 (2010). *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013). But, the United States Court of Appeals for the Fifth Circuit, without comment or reference to the *Perdue* decision, has continued to utilize the approach laid out by this Court. *See Black v. Settle Pou, P.C.*, 732 F.3d 492, 502-03 (5th Cir. 2013). *But see In re Pilgrim's Pride Corp.*, 690 F.3d 650,

663-64 (5th Cir. 2012) (analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 296 (5th Cir. 2014) (following *Pilgrim's Pride*).

And the Fifth Circuit, in a more recent published opinion, has rejected the argument "that *Perdue* clearly disfavors applying the *Johnson* factors to determine a fee award and instead requires the use of only the lodestar." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 393 (5th Cir. 2016). The Court of Appeals explained that

> [w]e agree that *Perdue* requires courts to first calculate the lodestar; indeed, this has long been our practice. *See, e.g., League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the 'lodestar.'"). But *Perdue* does not, as Combs contends, make it impermissible to then consider any relevant *Johnson* factors. *Perdue* cautions against the sole use of the *Johnson* factors to calculate a reasonable attorney's fee but nowhere calls into question the use of relevant *Johnson* factors to make this determination. Indeed, *Perdue* expressly allows adjustments "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. at 554, 130 S. Ct. 1662. ....
> And though the lodestar is presumed reasonable, it may be adjusted where it "does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554, 130 S. Ct. 1662. .... *Perdue*, consistent with the Court's frequent pronouncements, explains that lodestar enhancements are to be rare. ....
> In sum, the district court should begin by calculating the lodestar: the reasonable hours expended multiplied by a reasonable rate. The district court may then determine whether any other considerations counsel in favor of enhancing or decreasing the lodestar. In light of the "strong presumption" that the lodestar represents a sufficient fee, enhancements must necessarily be rare. *Perdue*, 559 U.S. at 553-54, 130 S. Ct. 1662.

*Id.* at 393-95.

*Perdue*, then, did not change the proper method for calculating attorneys' fees awards in the Fifth Circuit. Accordingly, the analysis below will take into account the necessary factors when determining the appropriate amount of attorneys' fees to be awarded under Federal Rule of Civil Procedure 37(b)(2)(C).

## Analysis

Defendants explain that,

> [i]n this case, BMW of Dallas and ESIS seek to recover their fees as determined by the lodestar method. Defendants are not aware of any exceptional circumstances and thus do not seek a modification of the lodestar amount. BMW of Dallas and ESIS are not seeking reimbursement of all time spent by their counsel in preparing and filing the Motion to Compel and the Reply. Defendants are not seeking reimbursement for time spent in internal conferences relating to the Motion to Compel, communications between counsel and the Defendants relating to the Motion to Compel, or the costs and fees associated with preparation for and attendance at the hearing on the Motion to Compel. The fees that Defendants seek are far less than the total amount spent while engaged in the wheel spinning that resulted from Plaintiffs' discovery abuses. Per the language in the Court's April 2, 2018, Order, the fees sought by Defendants are limited to those incurred in the physical acts of drafting and filing the Motion for Sanctions and the reply in support thereof.
> 
> 12. The amount of time spent by each attorney that worked on the Motion for Sanctions and Reply Brief is detailed in the attached Affidavit of Mark A. Bankston, Defendants' designated lead trial counsel. The tasks detailed in the attached billing records are limited to those tasks necessary to prepare and file the Motion for Sanctions and the Reply Brief. The total amount of attorneys' fees sought by Defendants is $3,382.50.

Dkt. No. 106 at 4-5 (footnotes omitted).

Plaintiffs respond that,

[o]n April 2, 2018, the Court ordered the parties to confer regarding attorney's fees related to Defendants' Motion for Discovery Sanctions. *See* Dkt. 72. On April 18, 2018, the parties met to discuss purported hours Defendants spent related to their Motion for Discovery Sanctions. Defendants submitted to Plaintiffs time entries for seven (7) different dates, of alleged work. *See* Exhibit A.

During their meeting, Plaintiffs informed Defendants that several of the time entries were excessive, as the documents that they were related to, required no legal research, and were short in length. Defendant stated that the attorneys that prepared such motions had no mental disease or defect, and could not provide a reason as to why it took so much time to prepare motions that required no research or extensive preparation. Plaintiffs referred to their billing records for their corresponding motions, and informed Defendant of what an appropriate amount of time would have been to spend on said motion. The meeting ended without the parties noting what would be an acceptable amount of time for three (3) of the time entries. *See* Exhibit B. Plaintiffs never received a response to that email. *See* Exhibit C.

....

The alleged amount of time spent drafting documents relating to Defendants' Motion for Discovery Sanctions is excessive. For example, Defendants originally alleged that 6.3 hours were spent to prepare Defendants' Motion for Discovery Sanctions (Dkt. 56). *See* Exhibit A. This amount of time was later changed to 4.4 hours. *See* Exhibit D. The text of Defendants' Motion for Discovery Sanctions excluding headings, a signatures, is three (3) pages. No case law was cited in said motion. Plaintiffs do not believe that the drafting of Defendants' Motion for Discovery Sanctions required 4.4 hours, as Plaintiffs' own Motions to Compel and Request for Sanctions, required less amount of time to prepare, was in greater detail, and included legal citations. *See* Dkt. 65.

The remaining time entries that Defendants submitted relate to Plaintiffs' Reply, and Defendants' response. When speaking with Defendants on April 18, 2018, Plaintiffs asked Defendants about for additional details regarding the remaining time entries that were submitted. For example, on March 19, 2018, Defendants originally stated that they allegedly spent 3.2 hours working with IT staff on email fabrication issues, and beginning the initial draft of their reply. *See* Exhibit A. This time entry was later adjusted to 2.0 hours. *See* Exhibit D. When asked what their work with IT staff entailed, Defendants could not produce details regarding the details of the time entry. This was the same for the remaining time entries.

....

> Defendants submitted inflated billing records to the Court. The time entries provided show excessive amounts of time spent drafting documents that required no legal research, and that were short in nature. Defendants have not been able to provide sufficient reasoning as to why, small tasks required such a great amount of time. For this reason, Plaintiffs request that the Court require Defendants to provide sufficient supporting documentation to support their excessive time entries, or that the Court determine the appropriate amount of time that should have been spent on said matters, and enter an order based on the time entries that the Court finds appropriate.

Dkt. No. 126 at 1-3.

Defendants reply that,

> [c]iting no case law and no evidence that supports their position, Plaintiffs' Response claims the amount of fees Defendants' expended on the Motion to Compel and Motion for Sanctions ("Defendants' Motion") and Reply is excessive. In reality, the amount is much less than what was actually required to combat Plaintiffs' discovery abuse. The only evidence before the Court is that the amount of fees is reasonable and necessary.
>     2. In accordance with the Court's order, Defendants limited the amount of fees requested down to the bare bones amount of time spent actually drafting and filing the Motion. After the parties could not reach an agreement as to that amount, Defendants further discounted the amount to what was actually charged to Defendants by Defendants' counsel and paid. Such discounting is customary.
>     3. Defendants' counsel taking care of their clients because the opposition was abusing the discovery process is not evidence that the amount requested in the Application for Attorney's Fees is not reasonable and necessary. Likewise, the amount of time Plaintiffs' counsel contends to have spent on Plaintiffs' response is not evidence that the amount Defendants request is not reasonable and necessary.
>     4. Plaintiffs' discovery abuse forced Defendants and the Court to expend an inordinate amount of time on a claim of mental anguish that Plaintiffs ultimately waived at trial. Defendants are not being compensated for all of the time spent on this issue. Defendants have also twice discounted the amount down to what was actually charged and paid. The amount cannot be discounted further.

Dkt. No. 128 at 1-2 (footnotes omitted). Defendants further explain that Plaintiffs "reference the amount of time spent determining if Plaintiffs' counsel fabricated the

email to submitted to the Court" and that "[t]hat issue was pertinent to the issue of sanctions as Defendants have evidence that the purported email was never received." *Id.* at 1 n.1. Defendants maintain their request that "the Court grant their Application for Attorneys' Fees in the total amount of $3,382.50." *Id.* at 2.

Defendants' fee application is supported by the Affidavit of Mark A. Bankston, which incorporates his firm's records. *See* Dkt. No. 106-1. Mr. Bankston avers that

> I am the attorney of record for AN Luxury Imports, LTD, d/b/a BMW of Dallas ("BMW of Dallas") and ESIS, Inc. ("ESIS" and with BMW of Dallas, collectively "Defendants") in the above entitled and numbered cause. I and other attorneys in the employ of JDKG have represented Defendants in all phases of said litigation. In the course of my representation, attorneys and/or staff members of this law firm have expended and will expend on behalf of Defendants the following time for the following services related to the preparation and filing of Defendants' Second Motion to Compel and for Sanctions and the Reply Brief in support of that motion....
> 3. In the billing summary set forth above, figures in parenthesis indicate the actual time spend on a given task. The figures above the parentheticals indicate the totals that were billed to Defendants for the work described. The reduction in time reflected in the billing summary above is also reflected in the actual billing records attached to the Defendants' Application for Attorneys' Fee as Exhibit "B." It is my opinion that all of the legal work perfonned in this matter by the attorneys and staff of JDKG was both reasonable and necessary. BMW of Dallas and ESIS are sharing the costs of defense pursuant to an agreement between the two Defendants.
> 4. I am a licensed attorney, practicing in the Courts of this County, State and Federal District. I have practiced law in Texas for approximately twenty years, and have extensive experience in the area of commercial litigation and, specifically, in cases similar to the present that involve auto dealerships. I am familiar with the usual and customary attorney's fees charged in Dallas County, Texas for similar representation as I have appeared in Cases in and around Dallas County, and in the United States District Court for the Northern District of Texas many times in the past twenty years.
> 5. George A. Kurisky, Jr. is a shareholder of JDKG. Mr. Kurisky has been licensed to practice law in the State of Texas for over

twenty-eight years. Mr. Kurisky has extensive experience in the area of commercial litigation and in cases similar to this case wherein the interests of an auto dealership is involved. Mr. Kurisky charged a rate of $275.00 per hour for his efforts in the matter. It is my opinion that this is a reasonable rate for an attorney of Mr. Kurisky's experience level and background in Dallas County, Texas and in the Norther District of Texas, Dallas Division. Mr. Kurisky routinely bills at a rate of $450.00 per hour for work performed in similar matters. The rate of $275.00 per hour is below the usual and customary rates charged by attorney of similar experience and ability for services rendered in matters similar to this one in Dallas County, Texas.

6. Christopher A. Grimm is an associate attorney employed by JDKG. Mr. Grimm has practiced law in Texas for more than seven years, and has extensive experience in the area of commercial litigation and cases similar to the present. I am familiar with the usual and customary attorney's fees charged in Dallas County, Texas for similar representation by attorneys of similar experience and ability. Mr. Grimm charges an hourly rate in this matter of $275.00. It is my opinion that Christopher Grimm's hourly rate is reasonable for an attorney of his experience level and background in Dallas County, Texas in a matter such as this.

7. The billing records attached as Exhibit "B" to Defendants Application for Attorneys' Fees accurately reflect the time spent and fees incurred in completing the tasks above. In performing these tasks, Mr. Kurisky spent a total of 3 .3 hours working on this matter. Christopher Grimm has spent 14.6 hours working on this matter. Of the time spent on the matter by Christopher Grimm, nine (9) hours were billed to the clients. Taking into consideration the time and labor involved, the nature of the case at bar and the complexity of the issues involved, the expertise, reputation and ability of counsel, other employment lost, extent of responsibility assumed, the benefits to be derived by Defendants and the costs and expenses incurred by Defendants, I am of the opinion that a reasonable attorneys' fee in this cause with respect to the preparation and filing of Defendants' Second Motion to Compel and for Sanctions and the Reply Brief filed in support would be the sum of $3,382.50. This amount was calculated multiplying the number of hours spent on this matter by the applicable hourly rate.

Dkt. No. 106-1 at 1-3.

Defendants seek to recover fees at $275.00 an hour for 12.3 hours of Mr. Kurisky's and Mr. Grimm's time drafting and filing their Motion for Discovery

Sanctions [Dkt. No. 56] and reply in support [Dkt. No. 70]. Mr. Bankston declares that his $275 per hour rate for Mr. Kurisky in this case was substantially less than his regular $450 per hour billing rate. Plaintiffs do not challenge the hourly rates for these two attorneys, which the Court finds is reasonable and within the market rate for attorneys and law clerks handling this type of litigation in the Dallas area.

The billing records that Mr. Bankston submitted reflect the work that these attorneys performed drafting and filing their Motion for Discovery Sanctions [Dkt. No. 56] and reply in support [Dkt. No. 70]. The records include a narrative description of the work done and the number of hours that it took to complete the work along with the discount in what was actually billed to the client and that, accordingly, reflects the required billing judgment.

The Court has carefully reviewed these records and finds that the 12.3 total hours that Defendants attribute to drafting and filing their Motion for Discovery Sanctions [Dkt. No. 56] and reply in support [Dkt. No. 70] are reasonable and necessary and not excessive, duplicative, or inadequately documented and therefore were reasonably expended for the tasks for which the Court has determined that Defendant should be awarded their attorneys' fees.

Based on the Court's familiarity with these motion proceedings and the disputes on which they are based, the Court does not find 4.4 hours spent on the Motion for Discovery Sanctions [Dkt. No. 56] to be excessive, despite its relative brevity. And the Court finds that Defendants' remaining time entries provide sufficient explanation of the work being performed in reviewing Plaintiffs' response and then outlining and

drafting and filing the reply – including the work with counsel's IT staff – to justify as reasonable the 7.9 hours expended for which Defendants seek to recover their attorneys' fees. The Court overrules Plaintiffs' objections to these time entries and amounts.

The Court therefore finds the appropriate lodestar here to be calculated as 12.3 hours at $275.00 an hour for a total of $3,382.50.

The Court has considered the *Johnson* factors but notes that the lodestar is presumed to be reasonable and should only be modified in exceptional cases. Defendants do not seek an enhancement of his attorneys' fees. And the Court determines that no enhancement is warranted under the circumstances and that there are no other exceptional circumstances.

**Conclusion**

For the reasons explained above, the Court GRANTS Defendant AN Luxury Imports, Ltd. d/b/a BMW of Dallas and ESIS, Inc.'s Application for Attorneys' Fees [Dkt. No. 106] and ORDERS that, under Federal Rule of Civil Procedure 37(b)(2), Plaintiffs' counsel must pay Defendants AN Luxury Imports, Ltd. d/b/a BMW of Dallas and ESIS, Inc. the attorneys' fees that they incurred in drafting and filing their Motion for Discovery Sanctions [Dkt. No. 56] and reply in support [Dkt. No. 70], by **September 30, 2018**, in the amount of $3,382.50.

SO ORDERED.

DATED: August 22, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE